IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MARCUS TUNSTALL, #402077<br>    Plaintiff, | * | |
| v. | * | CIVIL ACTION NO. DKC-15-1580 |
| LARRY HOGAN, *et al*.<br>    Defendants. | * | |

\*\*\*\*\*

## **MEMORANDUM OPINION**

Pursuant to the authorization of the United States Court of Appeals for the Fourth Circuit, on June 18, 2013, counsel for Marcus Tunstall ("Tunstall") filed a successive 28 U.S.C. § 2254 Petition for habeas corpus relief. *See Tunstall v. Shearin*, Civil action No. DKC-13-1781 (D. Md.). The Petition solely raised a challenge pursuant to *Miller v. Alabama*, 132 S.Ct. 2455 (2012), to the legality of Tunstall's 1991 life sentence without parole imposed when he was a juvenile.[1] The case is currently being held in abeyance under *Rhines v. Weber*, 544 U.S. 269 (2005) while Tunstall exhausts his claim before the state courts. Upon review of counsel's most recent status report, Tunstall's motion to correct an illegal sentence was recently denied by a state court judge and is currently on appeal before Maryland's intermediate appellate court. *See Tunstall v. Shearin*, Civil Action No. DKC-13-1781 at ECF No. 31.

On June 1, 2015, Tunstall filed the above-captioned 42 U.S.C. § 1983 civil rights complaint for declaratory judgment and monetary damages, against the current Governor of Maryland and approximately 154 of the 187 members of the Maryland General Assembly. ECF No. 1. The Complaint itself raises no particular claims.[2] Tunstall alleges that:

---

[1] The Supreme Court Opinion in *Miller*, issued on June 25, 2012, held that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without the possibility of parole for juvenile offenders." *Miller*, 132 S.Ct. at 2469.

[2] Attached to the Complaint are copies of proposed legislation in the Maryland Senate and House of Delegates providing for sentencing review and parole eligibility of certain juvenile offenders sentenced as adults and a 2013 Report of the Task Force on Juvenile Court Jurisdiction. ECF Nos. 1-1, 1-2 & 1-3. Tunstall maintains that the proposed legislation was read out as unfavorable by Maryland legislators.

> "The Defendants are continuing to act under the "color of law" to further violate the mandate of the U.S. Constitution--regarding juveniles—and, although the Defendants acknowledge that Maryland laws are illegal, they refuse to correct said laws; thereby continuing to violate the U.S. Constitution."

ECF No. 1 at pg. 5.

The memorandum accompanying the Complaint alleges that Maryland's laws are violative of the United States Constitution and federal intervention is required to correct the State laws to conform to the United States Constitution. ECF No. 1 at Memorandum. Tunstall premises his claim on four grounds: (A) that Maryland's parole statute is unconstitutional as applied to juvenile offenders; (B) Maryland violates the long-held principle of "innocent until proven guilty," when it statutorily created a "suspect class" of juveniles with the introduction of the Maryland Juvenile Causes Act; (C) Maryland violates the Eighth and Fourteenth Amendments by its laws which prohibit some juvenile offenders from obtaining a "reverse waiver" hearing from adult courts back to the juvenile courts; and (D) Maryland violates the Fourteenth Amendment by its creation of a statute which disregards a protected "liberty interest" against a "suspect class" of juvenile offenders. *Id*.

Tunstall states that he "does not challenge the constitutionality of his conviction or sentence through this § 1983 proceeding;" rather, he states that he is attacking the constitutionality of Maryland's parole statute and its treatment of certain juvenile offenders as a "suspect class." He points to the *Miller* decision as well as Maryland's continued application of statutes that (1) provide that the Maryland Parole Commission lacks jurisdiction over anyone convicted and sentenced to life without parole and (2) the Maryland Juvenile Court lacks jurisdiction over any juvenile, from ages 14 to 17 under the Maryland Juvenile Causes Act (codified as Md. Code. Ann., Cts. & Jud. Proc., § 3-8A-03) if they are charged with a crime which, if committed by an adult could result in a sentence of death or life imprisonment. ECF No. 1 at memorandum. Tunstall's Complaint is accompanied by

Motions for Leave to Proceed In Forma Pauperis and for Appointment of Counsel. ECF Nos. 2 & 3. Because he appears indigent, his Motion for Leave to Proceed In Forma Pauperis shall be granted.

Under 28 U.S.C. § 1915A(a) and (b)(1), the court must screen complaints in civil actions filed by prisoners seeking redress from an officer or employee of a governmental entity and "dismiss the complaint or any portion of the complaint" that the court finds "frivolous, malicious or fails to state a claim upon which relief may be granted." While this court is mindful that the pleadings of self-represented litigants are liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), factual allegations in a complaint must contain "more than labels and conclusions," and the action may be dismissed if the allegations do not provide "enough to raise a right to relief above a speculative level." *Bell Atlantic Corporation v. Twombly,* 550 U.S. 544, 555 (2007). The screening is necessary to determine whether defendants/respondents should be required to respond to the action.

Absolute legislative immunity attaches to all actions taken "in the sphere of legitimate legislative activity," and the doctrine "shields from suit not only legislators, but also public officials outside of the legislative branch when they perform legislative functions." *Baraka v. McGreevey,* 481 F.3d 187, 195-96 (3d Cir. 2007) (quotation omitted). Tunstall appears to allege that constitutional rights were violated as a result of the refusal to enact proposed legislation. However, a legislator's acts of drafting, debating, and then voting on a bill constitute legitimate legislative activities. *See, e.g., id.* at 197. Governor Hogan is also entitled to immunity for such constitutionally authorized activities as whether to sign or veto a particular bill and whether to recommend proposed legislation to the General Assembly.

State legislators are absolutely immune from liability for damages under § 1983 for their legislative acts. *Tenney v. Brandhove*, 341 U.S. 367 (1951). Indeed, Eleventh Amendment

immunity bars claims for damages against Governor Hogan and the named 154 legislators who presumably declined to vote in the affirmative on the legislation, insofar as they were named in their official capacities. *See, e.g.*, *Melo v. Hafer,* 912 F.2d 628, 635 (3d Cir. 1990). On the other hand, the Eleventh Amendment does not preclude personal-capacity damages claims against Defendants or for prospective relief to stop the continuing violations of federal law. *See Melo,* 912 F.2d at 635. Nevertheless, Tunstall's damages claims against the individual Defendants are barred by the legislative immunity doctrine and his claim for declaratory relief fails to satisfy the "case or controversy" requirement of the federal Constitution. *See Lattaker v. Rendell*, 269 Fed. Appx. 230, \*\*2 (3d Cir. 2008).

Tunstall further seeks a judgment declaring, among other things, that the Maryland Legislature violated the U.S. Constitution by continuing to enforce laws that violate the Constitution and that it must modify those laws by passing new legislation affecting the sentences and parole eligibility of juvenile offenders. To the extent that Tunstall has issues with the failure to adopt the proposed legislation or otherwise to amend Maryland's current law on parole eligibility and sentencing for juvenile offenders, he has failed to demonstrate his standing to file suit. Absent standing, a party cannot invoke a court's jurisdiction. *See, e.g., Allen v. Wright,* 468 U.S. 737, 750–51 (1984); *Southern Walk at Broadlands Homeowner's Assoc. Inc. v. Openband at Broadlands, LLC*, 713 F.3d 175, 85 (4th Cir. 2013). Any plaintiff seeking to invoke the jurisdiction of a federal court must establish standing. The doctrine of standing consists of two distinct "strands": constitutional standing pursuant to Article III and prudential standing. *See Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004). The requirements for constitutional standing reflect that Article III "confines the federal courts to adjudicating actual 'cases' and 'controversies.'" *Allen v. Wright*, 468 U.S. 737, 750 (1984*); see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1993)

("[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III[.]"). To establish Article III standing, a plaintiff must demonstrate that:

> (1) [he] has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Doe v. Obama*, 631 F.3d 157, 160 (4th Cir. 2011) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)).

In addition to satisfying constitutional standing requirements, a plaintiff must also demonstrate that his claims are not barred by prudential limitations on a federal court's exercise of jurisdiction. *See Doe v. Sebelius*, 676 F.Supp.2d 423, 428 (D. Md. 2009) (citing *Elk Grove Unified Sch. Distr.*, 542 U.S. at 12). In contrast to Article III standing, prudential standing "embodies judicially self-imposed limits on the exercise of federal jurisdiction." *Elk Grove Unified Sch. Distr.*, 542 U.S. at 11. One such limitation is that "a plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). This limitation serves to "preclude a court from deciding 'questions of broad social import in cases in which no individual rights will be vindicated'" and to ensure that "access to the federal courts [is] limited to those litigants best suited to assert the claims." *Buchanan v. Consolidated Stores Corp.*, 125 F.Supp.2d 730, 738 (D. Md. 2001) (quoting *Mackey v. Nationwide Ins. Cos.*, 724 F.2d 419, 422 (4th Cir. 1984)).

Tunstall acknowledges that he is not seeking to overturn or challenge his 1991 sentence. He has not satisfied any of the requirements to demonstrate standing. Accordingly, there is no "substantial likelihood" that Tunstall will be affected as a result of the failure to pass the legislation

in either the Maryland Senate or House of Delegates. The court therefore rejects his declaratory judgment claim against Defendants.

Finally, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988); *see also Kentucky v. Graham,* 473 U.S. 159, 166 (1985) ("to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right."). The facts set out by Tunstall fail to show the personal unconstitutional wrongdoing of Defendants in the deprivation of Tunstall's rights.

In light of these findings, the Complaint shall be summarily dismissed.[3]  A separate Order follows.

Date:  June 25, 2015  _____/s/_____
                      DEBORAH K. CHASANOW
                      United States District Judge

---

[3] In light of this decision, Tunstall's Motion to Appoint Counsel shall be denied.